UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAR 3 ♦ 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-274-GWU

JERRY LEWIS,                                                         PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Lewis

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

Lewis

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Lewis

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Ibid</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d

Lewis

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the
Commissioner's decision may be produced through reliance on this expert testimony
only if the hypothetical question given to the expert accurately portrays the plaintiff's
physical and mental impairments.   Varley v. Secretary of Health and Human
Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jerry Lewis, was found by an Administrative Law Judge (ALJ)
to have "severe" impairments consisting of low back pain secondary to degenerative
disc disease with a bulge at L5-S1, degenerative joint disease of the right knee, right
shoulder pain of uncertain etiology, and being status post colostomy secondary to
a sigmoid colon perforation during colonoscopy. (Tr. 16).  Nevertheless, based in
part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Lewis
retained the residual functional capacity to perform a significant number of jobs
existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-1).  The
Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of
the plaintiff's age of 47 years, high school equivalency education, and work
experience as a service station operator could perform any jobs assuming that he
were limited to light level exertion, and also had the following non-exertional
impairments. (Tr. 346).  He: (1) could stand and walk a total of six hours in an eight-
hour day; (2) could not work with his hands held overhead; (3) could only

7

occasionally push, pull, reach, or grasp with the right arm; and (4) could not operate

foot pedal controls with the right leg.  (Id.).  The VE responded that such a person

could perform the light level jobs of non-hazardous security work and recreation aide

in the nursing care industry, and the sedentary job of surveillance systems monitor,

and proceeded to give the numbers in which they existed in the state and national

economies.  (Tr. 346-8).

On appeal, this Court must determine whether the hypothetical factors

selected by the ALJ are supported by substantial evidence, and that they fairly depict

the plaintiff's condition.

Mr. Lewis initially alleged disability due to residuals from a perforated colon

(Tr. 58), although at the administrative hearing he also described an inability to use

his right arm because of  shoulder problems, as well as back pain due to a disc

problem, and right leg weakness.  (Tr. 328).  After his colon had been a perforated

during a colonoscopy, it had become infected, and for the next three months he had

to use a colostomy, but his main abdominal problem now consisted of a hernia,

which he had been told might require a further surgery.  (Tr. 326, 331).  He felt his

biggest problem was his inability to use his right arm, which his physician, Dr.

Sharma, called a frozen shoulder.  (Tr. 331).  Dr. Sharma planned to give him shots,

which would start the week after the administrative hearing.  (Tr. 329).  At the time

of the hearing, the shoulder was intensely painful and he was unable to pick up more

than light objects.  (Tr. 339).  He had been told not to lift over approximately 10

8

pounds because of his hernia. (Tr. 336). His back pain and right leg weakness were also problems (Tr. 331), and Mr. Lewis said that he was unable to sit for more than approximately 30 minutes and could not stand for over 20 minutes (Tr. 341).

A considerable part of the medical records in the transcript reflect the plaintiff's history of colon perforation in mid-2003. (E.g. Tr. 119-21, 138-40). The plaintiff's treating physician, Dr. Bruce Belin, indicated in October, 2003, that the colostomy would be removed the next week. (Tr. 238). Dr. Belin performed a colonoscopy in February, 2004, that showed widely patent and "well healed" colorectal anastomosis. (Tr. 232-3). He did not indicate that there would be any permanent functional restrictions due to this problem, and a state agency physician who reviewed a portion of the records felt that it would not be "severe" for a period of 12 months or more. (Tr. 175). Dr. Belin also treated the plaintiff for abdominal pain, and EGDs were performed, the second of which showed a hiatal hernia and stomach contents that were positive for heliobacter. (Tr. 232-4). Although there are no further records from Dr. Belin, records from another source indicate that Mr. Lewis was treated with "triple therapy," and a third EGD was unremarkable with no evidence of ulcers. (Tr. 304). If Dr. Belin placed any restrictions on Mr. Lewis due to the hiatal hernia, there is no indication in the records submitted to the ALJ.

Two subsequent examining sources, Dr. Patrick Leung and Dr. James Templin, listed functional restrictions which were rejected by the ALJ. The plaintiff's primary argument on appeal is that it was error to reject their opinions.

Dr. Patrick Leung, a neurologist, began treating the plaintiff in August, 2003 for weakness and back pain which, the plaintiff reported, radiated down his legs to his toes. (Tr. 265). Dr. Leung's examination revealed a normal motor examination except for mild weakness of the right hip flexor and right knee extensor, and lumbosacral spine tenderness. (Id.). Mr. Lewis was able to do a deep knee bend with some mild difficulty. (Id.). Heel, toe, and tandem walking were normal. (Id.). Dr. Leung planned to obtain tests but, in the meantime, prepared a physical residual functional capacity assessment limiting the plaintiff to less than sedentary level lifting, standing or walking less than two hours per day, needing a sit-stand option, having limitations on pushing and pulling in the lower extremities due to abdominal and back pain, "occasionally" climbing, balancing, kneeling, crouching, and crawling, and limited reaching due to "pain/abscess formation." (Tr. 261-4). However, the physician stated that medical improvement was expected once his abdominal problem had resolved with the colostomy. (Tr. 264).

Most of the physician's treatment of the plaintiff took place after the functional capacity assessment was prepared, and consisted of some fairly extensive investigations, including two MRIs of the lumbar spine which showed only a mild diffuse disc protrusion at L5-S1 without central canal stenosis (Tr. 272, 274), normal EMG/NCV examinations of both the upper and lower extremities (Tr. 270-1, 275-6), and a negative cervical spine x-ray (Tr. 273). However, an x-ray of the right knee did show degenerative changes. (Id.). In October, 2003, less than two weeks after the

functional capacity assessment was completed, Mr. Lewis apparently told Dr. Leung that he was slowly getting back to his routine and walking about a mile two times a day. (Tr. 260). The physician commented that he "has not been able to work due to his colostomy." (Id.). Dr. Leung also discussed "disability," and reported that he told Mr. Lewis that he should continue to take some time off before returning to work in his garage, until his colon was repaired. (Id.). On April 1, 2004, Mr. Lewis reported that his colostomy had been repaired and he was doing fairly well from that standpoint, other than having a weak spot in his abdominal wall which was at risk for a hernia. (Tr. 259). He had returned to Dr. Leung for evaluation of persistent low back pain that radiated down his right leg, and reported that the right leg sometimes gave out. (Id.). A physical examination showed a normal gait, station, and reflexes without weakness or atrophy, and the patient was able to walk on his heels and toes in perform a deep knee bend. (Tr. 259). Dr. Leung decided to repeat some of the previous studies, again with negative results except for the lumbar disc bulge and x-ray showing right knee arthritis. (Tr. 257, 259). The plaintiff also began complaining of right arm pain, and physician stated that he could not exclude rotator cuff problems.[1] However, he concluded that the lack of evidence of radiculopathy or

---

[1] The plaintiff was subsequently examined by Dr. Mukut Sharma for the right shoulder problem, and an MRI showed mild AC joint arthritis is. (Tr. 306, 309). Dr. Sharma also diagnosed right cubital tunnel syndrome. He diagnosed a "frozen shoulder" as well, and recommended physical therapy, then shoulder manipulation under general anesthesia or cortisone shots as well as ulnar nerve decompression. (Id.). There is no indication of whether these procedures were performed, and no mention of specific

neuropathy meant that the plaintiff's problems were likely musculoskeletal in nature. (Tr. 257).  Dr. Leung prescribed Neurontin, and planned to wean the patient off of Lortab "over the next month or so when the pain has improved."  (Id.).

Given the qualifications that Dr. Leung put on his functional capacity form regarding expected improvement in the plaintiff's colon condition, which reportedly had largely taken place by the time of the April 1, 2004 office visit, the subsequent lack of objective evidence for extensive restrictions due to musculoskeletal problems, and particularly his implication that Mr. Lewis would eventually be able to return to his service station job, it was reasonable for the ALJ to decline to accept Dr. Leung's 2003 functional capacity assessment at face value.[2]

The other source who issued functional restrictions was Dr. James Templin, who examined Mr. Lewis only one time, on January 23, 2004.  (Tr. 224).  However, from his report, it appears that he had the benefit of review of extensive prior records.  (Tr. 224-5, 228).  His examination showed tenderness of the lower lumbar spine decreased range of motion, and decreased sensation in the right leg in a dermatomal pattern consistent with L5.  (Tr. 226).  There was also a reduced range of motion of the hips, straight leg raising was positive on the right side, and deep knee bends were performed but with poor balance.  (Id.).  Dr. Templin concluded

_____

functional limitations.

[2]The ALJ did accept limitations on reaching with the right arm and operating foot controls which are generally consistent with that portion of Dr. Leung's restrictions.

Lewis

that Mr. Lewis could lift a maximum of 20 pounds from waist level and 10 pounds from the floor level, but could not do either activity repetitively or for any extended distance or time. (Tr. 229). He felt that the plaintiff would be limited to a total of 1.5 hours of standing and walking in an eight-hour day (no more than 20 to 30 minutes without interruption), and sitting a total of four hours (45 to 60 minutes without interruption). (Tr. 229-30). He could climb, balance, stoop, crouch, kneel, or crawl, but not as much as one-third of the time in an eight-hour day, would have limitations on pushing and pulling, and needed to avoid cold, damp environments and vibration. (Tr. 230). He also felt that the plaintiff had difficulty with sleep, concentration, and fatigue, and would have a "seriously limited but not precluded" ability to deal with work stresses and maintain attention and concentration. (Tr. 230-1).[3]

The ALJ indicated that he would agree with Dr. Templin's lifting restrictions, which he described as being able to lift and carry 20 pounds occasionally and 10 pounds frequently. (Tr. 18). However, as noted earlier, Dr. Templin had indicated that the plaintiff could not lift any weight frequently, so this was a clear error. (Tr. 229). The ALJ rejected Dr. Templin's non-exertional restrictions, stating generally that they were inconsistent with his activities and the other medical evidence, and particularly emphasizing that the plaintiff had told Dr. Leung that he was walking two miles a day. (Tr. 18). However, the plaintiff had said that he was walking "about" a

---

[3]These mental restrictions are uncontradicted.

13

Lewis

mile two times a day (Tr. 260), it is not obvious to a lay reviewer that it would be impossible to walk one mile in 30 minutes, which was the maximum that Dr. Templin felt that the plaintiff could be on his feet at one time, two times a day.  The ALJ appeared to conclude that the plaintiff's physical findings were not sufficient to support Dr. Templin's restrictions, but he did have objective findings of a bulging disc and an arthritic right knee, and some abnormalities on physical examination. Therefore, since Dr. Leung never updated his restrictions, and since no state agency physicians reviewed the entire record, a remand will be required for further medical evidence if the opinions of the examining source are to be rejected.

The decision will be remanded for further consideration.

This the ___*31*___ day of March, 2006.

G. WIX UNTHANK
SENIOR JUDGE

14